**JAMES CORPORATION d/b/a/**
**James Construction**

v.

**NORTH ALLEGHENY SCHOOL DISTRICT, Thomas & Williamson, LLC, D&L, Inc., Foreman Architects Engineers, Inc., and Chambers Vukich Associates, P.C.**

**Appeal of: North Allegheny**
**School District.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2007.

Decided Nov. 30, 2007.

Reargument Denied Jan. 30, 2008.

David Raves, Pittsburgh, for appellant.

David E. Sweitzer, Pittsburgh, for appellee, James Corporation d/b/a James Construction.

Matthew M. Hoffman, Pittsburgh, for appellee, Foreman Architects Engineers, Inc.

Scott W. Stephan, Pittsburgh, for appellee, Chambers Vukich Associates, P.C.

BEFORE: COLINS, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

A matter of first impression and a primary issue in this appeal is whether the Allegheny County Common Pleas Court (trial court) erred by awarding James Corporation, d/b/a James Construction (Contractor) acceleration damages under the "measured mile" theory of recovery.

Contractor's claims arose out of a contract with the North Allegheny School District (School District) for renovations to Hosack Elementary School (Project). Contractor sought acceleration damages resulting from School District's refusal to extend the Project completion date after construction delays. Contractor also averred School District breached the parties' contract by failing to pay for additional work and materials. After a three-week non-jury trial, the trial court entered a verdict in Contractor's favor. School District appeals. Upon review, we reverse the trial court's award of expenses but affirm in all other respects. In addition, we remand to the trial court for calculation of post-judgment interest and attorney's fees in accord with the Commonwealth Procurement Code.[1]

## I. Background

In 1998, School District undertook steps to renovate five of its elementary schools. It retained the services of Foreman Architects Engineers, Inc. (Architect) for architectural services, and D & L, Inc. (First Construction Manager), for construction management services. Architect then contracted with Chambers Vukick Associates

---

1. 62 Pa.C.S. §§ 101–4509.

(Consultant) for consulting and landscape services.

The five projects were individually and publicly bid, but financed through the same bond issue. The Project here, Hosack Elementary, is located in McCandless Township (Township) and involved five construction phases. School District completed Phase I, site preparation, prior to soliciting bids for the Project. Phase II, slated for completion in May 1999, consisted of construction of an addition to the school, including an administrative suite, an entry, a kitchen, a multipurpose room and classrooms. Phase III consisted of converting an old multipurpose room into a library, and Phase IV called for building renovations. Phases III and IV were to begin after completion of the multipurpose room in Phase II. Although there was no physical connection between Phase II and Phases III and IV, there was a logical connection in that upon completion of the new multipurpose room in Phase II, School District would utilize the space while Contractor converted the old multipurpose room into a library. School District established a September 19, 1999 Project completion date.

Contractor submitted the lowest bid for the Project. Accordingly, the parties entered into a construction contract in the amount of $2,591,400. Importantly, the Project lacked a general contractor coordinating the work of all contractors.

Initially scheduled to commence September 1, School District issued a notice to proceed to Contractor on September 17, 1998. In addition to this two-week delay, several other notable delays occurred early in the Project. First, the Project required excavation for a sedimentation pond pursuant to an erosion and sedimentation (E & S) plan. The Township requires an E & S permit to be issued by the Allegheny County Conservation District (Conservation District),[2] and Architect and Consultant were responsible for obtaining the permit. Prior to Conservation District's issuance of the permit, however, the Township supplied School District with a building permit on September 28, 1998. Contractor did not engage in any earth moving activities until issuance of the E & S permit on October 15, 1998.

Another delay involved the location of a fence. The fence, erected during Phase I, was located in the new addition's footprint. Contractor and School District disagreed as to which party was responsible for moving the fence. Contractor moved it and, therefore, incurred additional costs.

The Project also called for removal of an underground utility duct bank, and School District required Contractor to hand-dig the area to locate it.[3] Subsequently, School District decided to retain the duct bank. This decision necessitated reconfiguration of the sedimentation pond.

The Project incurred additional delays when Contractor found asbestos in the roof flashing of an area to be demolished. As such, removal of the asbestos inhibited Contractor's work. Further delays were attributed to the plumbing contractor's interference with excavation work; the plumbing contractor took two months to perform work originally scheduled for less

---

2. *See* Township of McCandless Sanitary Authority Minimum Standards, § 1.3.6.

3. The parties disputed whether the contract anticipated hand excavation of the duct bank. Phase II required excavation, and the parties were unsure whether the duct bank was located in the addition's footprint. Because the duct bank supplied utility services throughout most of the Project, hand excavation was necessary so as not to disrupt service. That is, Contractor could not excavate the area with a backhoe. Notes of Testimony (N.T.) Vol. I at 100–103.

than a week. Finally, issues arose over dumpsters. Although Contractor had responsibility for trash removal and site clean-up, it disputed an obligation to supply the roofing contractor with dumpsters. School District required Contractor to provide the dumpsters; Contractor complied and incurred additional expenses.

For the first four months of the Project, contractors followed the critical path method (CPM) schedule contained in the bid documents. However, all prime contractors were to submit a proposed schedule so that First Construction Manager could develop a sequencing schedule. Only Contractor complied with this requirement.

In December 1998, Contractor and First Construction Manager, attempting to recover from the Project delays, agreed to new milestone dates for various Phase II events. First Construction Manager recommended to School District that an extension of the completion date would be necessary. The recommendation was set forth in a memorandum.

School District's response was significant. School District's facilities manager responded School District "cannot give [Contractor] any more time to complete the project, and don't tell them we know they need more time because that will open [School District] to claims." Trial Ct. Op., 7/11/06 at 5; see also Trial Ct. Op., 12/30/05 at 12.

Further, School District terminated First Construction Manager and hired in its place Thomas & Williamson (Second Construction Manager).[4] In February

1999, Second Construction Manager informed all contractors School District abandoned the December 1998 schedule and the Project would proceed under the original CPM schedule. Each contractor signed the CPM schedule in February 1999.

Despite the aforementioned delays, the Project was completed on time. Contractor informed School District of substantial completion on September 3, 1999, and Township issued School District an occupancy permit. After substantial completion, Contractor performed additional work at School District's direction. In the end, School District terminated the contract in October 2000 citing Contractor's refusal to perform outstanding punch list work.

## II. Trial Court Proceedings

Contractor subsequently instituted this action against School District and Second Construction Manager alleging economic harm. More specifically, Contractor alleged it accelerated its work because School District refused to recognize the construction delays and adjust the Project completion date accordingly. In order to meet the Project deadline, Contractor accelerated its work and hired additional workers. In addition, Contractor alleged School District withheld payments under the contract in bad faith and failed to pay for additional work and materials. Finally, Contractor set forth a claim of defamation against Second Construction Manager.[5]

---

4. Misters Thomas and Williamson resigned from First Construction Manager's employ in early December 1998 and started their own company. First Construction Manager subsequently declared bankruptcy. It is no longer involved in this action.

5. Contractor also set forth causes of action averring fraud, negligence, and intentional in-

terference with contractual relationships. Reproduced Record (R.R.) at 36a–43a. These claims were dismissed prior to trial. In addition, the trial court found in favor of Second Construction Manager on the defamation claim. Contractor did not appeal that determination.

School District joined First Construction Manager and Architect, alleging breach of contract and negligence against both parties. In a counterclaim against Contractor, School District sought damages for costs associated with completing Contractor's outstanding work, which according to School District exceeded any payments due under the contract.

After the usual course of discovery and pre-trial proceedings, the trial court held a non-jury trial in November 2004. Rendering a verdict in Contractor's favor, the trial court awarded the following damages:

| | |
|---|---|
| 1. acceleration/compression of work | $215,000 |
| 2. unpaid invoices including retainage and additional work less punch list items of $34,000 | $104,000 |
| 3. invoices for wall pads/doors | $ 18,934 |
| 4. prevailing wages withheld from Contractor | $ 28,969 |
| 5. attorney's fees | $110,000 |
| 6. expenses | $ 43,000 |
| | $520,550 |

Trial Ct. Op., 12/30/05 at 29.

In rendering its verdict, the trial court found several things significant. First, the court recognized the Project lacked a sequencing schedule until four months after it began. Second, the court considered School District's response to the December 1998 extended schedule a "smoking gun" in that School District admitted the revised schedule exposed it to delay claims. And third, the trial court noted School District's construction scheduling expert conceded Contractor's actual labor costs exceeded its estimate by $137,929.

The trial court also found the Project completed on time due to Contractor's acceleration of work. To that end, the trial court found Contractor's "measured mile" theory of recovery, discussed below, persuasive. Notwithstanding, the trial court awarded Contractor less than the claimed damages, indicating a reduction for those areas where the court believed the impact of delay was not as severe.

Accepting Contractor's calculations, the trial court also determined the Procurement Code required the payment of interest and penalties on the unpaid invoices. Notably, the trial court awarded Contractor $43,000 in expert witness fee expenses. Finally, the trial court awarded Contractor attorney's fees, but reduced the amount to reflect work performed on claims not before the court and duplication of services caused by Contractor's change of counsel mid-litigation.

Contractor and School District filed post-trial motions. In granting Contractor's motion, the trial court adjusted its verdict to include monies omitted from one payment invoice. However, the trial court refrained from reviewing School District's allegations of errors, deferring review of the interest calculations until final outcome. The court also viewed School District's substantive challenges to the verdict as attacks on its credibility determinations and evidentiary rulings. With the noted adjustment, judgment was entered in the amount of $524,087.75.

### III. Present Appeal

At the outset, we commend the trial court for its thoughtful resolution of the multiple issues before it. In addition, the parties presented this Court with thorough written argument addressing the appealed issues. The three-week trial produced volumes of testimony and exhibits, and effective appellate review is aided by the exemplary work of those involved.

We now focus on the issues raised on appeal. In general, School District alleges the trial court erred by: (1) concluding Contractor's claims are not barred by the contract documents; (2) finding School District acted in bad faith; (3) accepting Contractor's damage claims where it failed

to apportion Project delays between other contractors and School District, and accepting Contractor's theory of recovery; (4) reducing School District's counterclaim damages; (5) admitting hearsay testimony; and (6) denying School District's cross-claim against Architect.[6] As relief, School District seeks reversal of the judgment, or alternatively, judgment in favor of School District against Architect or a new trial.[7]

### A. Recovery under Contract

■ We begin with School District's argument Contractor's claims are barred by the contract. Specifically, School District asserts the contract bars Contractor's claim for acceleration damages,[8] Contractor failed to timely preserve its claim for damages, and Contractor failed to make timely claims for additional work under the contract.

### 1. No Damages for Delay/Acceleration

■ Citing Section 8.3.4 of the Supplemental Conditions,[9] School District first contends the clear and unambiguous contract language restricts Contractor's remedy for construction delay to an extension of time to complete its work. In the ab-

---

6. Our appellate role in cases arising from non-jury trial verdicts is to determine whether competent evidence supports the trial court's findings or whether the court committed an error of law. *Nevyas v. Morgan*, 921 A.2d 8 (Pa.Super.2007). The trial court's findings of fact must be given the same weight and effect on appeal as the verdict of a jury. *Id.* Further, we consider the evidence in a light most favorable to the verdict winner. *Id.*

7. When presented with an appeal from the denial of a motion for new trial, appellate courts must not interfere with the trial court's authority to grant or deny a new trial. *McManamon v. Washko*, 906 A.2d 1259 (Pa.Super.2006). The trial court must follow a two-step process, first determining whether factual, legal or discretionary mistakes were made. *Id.* If the trial court determined that one or more mistakes were made, it must then evaluate whether the mistake provided a sufficient basis for granting a new trial. *Id.* A new trial is not warranted merely because some irregularity occurred during the trial or another judge would have ruled differently; the moving party must demonstrate to the trial court that he or she suffered harm. *Id.*

Similarly, this Court follows a two-step analysis on appellate review: we must review the trial court's decision to determine whether that court agrees a mistake was made. *Id.* In doing so, we must scrutinize the court's decision for legal error or an abuse of discretion. *Id.* A trial court abuses its discretion by rendering judgment that is manifestly unreasonable, arbitrary or capricious, or fails to apply the law, or was motivated by partiality, prejudice, bias or ill will. *Id.*

8. Acceleration damages occur when a contractor speeds up its work at a pace faster than prescribed in the original contract. *Dep't of Transp. v. Anjo Constr. Co.*, 666 A.2d 753 (Pa.Cmwlth.1995). A contractor may recover for increased costs incurred as a result of accelerating its performance where "(1) its own delays in performance are excusable, (2) the contractor was ordered to accelerate, and (3) the contractor did so and sustained extra costs." *Id.* at 757. An acceleration order need not be express; it may be constructive. *Id.* Whether a constructive acceleration order was given is a question of law. *Id.*

9. Supplemental Condition 8.3.4 provides in part:

No payment or compensation or claim for damages shall be made to the Contractor as compensation for damages for any delays or hindrances from any cause whatsoever in the progress of the Work, notwithstanding whether such delays be avoidable or unavoidable. The Contractor's sole remedy for delays shall be an EXTENSION OF TIME ONLY, pursuant to and only in accordance with this Paragraph.... In consideration for this grant of a time extension, the [School District], the Construction Manager, and Architect shall not be held responsible for any loss or damage or increased costs sustained by the Contractor through any delays caused by [School District], Construction Manager or Architect or any other [c]ontractor or on account of the aforesaid causes or any other cause of delay. (R.R. at 482).

sence of a judicial determination that it positively or affirmatively interfered with Contractor's work, School District asserts the contract bars Contractor's claims for acceleration damages.

Initially, we note, a contract must be construed according to the meaning of its language. *Empire Sanitary Landfill, Inc. v. Riverside Sch. Dist.*, 739 A.2d 651 (Pa. Cmwlth.1999). Where the terms of a contract are clear and unambiguous, courts are required to give effect to that language. *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 706, 918 A.2d 748 (2007). Where parties mutually agree to a term at the time of contracting, the term will be generally enforced. *Id.*

Ordinarily, "no damages for delay" clauses are enforceable. However, Pennsylvania law recognizes exculpatory provisions in a contract cannot be raised as a defense where (1) there is an affirmative or positive interference by the owner with the contractor's work, or (2) there is a failure on the part of the owner to act on some essential manner necessary to the prosecution of the work. *Henry Shenk Co. v. Erie County*, 319 Pa. 100, 178 A. 662 (1935). Thus, affirmative or positive interference sufficient to overcome the "no damages for delay clause" may involve availability, access or design problems that pre-existed the bidding process and were known by the owner but not by the contractor. *Coatesville Contractors & Eng'rs, Inc. v. Borough of Ridley Park*, 509 Pa. 553, 506 A.2d 862 (1986).

The Supreme Court's decision in *Coatesville* is particularly instructive here. In that case, the borough awarded a contractor an excavation contract. A pre-bid site inspection revealed a nearby area was once a lake. At the time, however, the lake was filled with debris and silt. The bid documents provided the borough would drain the lake and maintain it for the duration of the project. When the contractor appeared on the job, however, the lake was full of water. Despite the contractor's notice to the borough regarding the lake's condition and the need for draining, the borough failed to take action. The contractor subsequently notified the borough of project completion, and it instituted a claim for additional sums over the contract price for costs incurred as a result of the borough's failure to drain the lake. Several months after the contractor filed suit, the borough successfully drained the lake and the contractor completed its work.

Rejecting the borough's argument the exculpatory provisions of the contract barred claims for additional costs, the Supreme Court noted that when the contractor informed the borough of the lake's condition, it failed to drain the lake per the parties' agreement. This, the Court held, constituted interference with the contractor's work and a failure to act in an essential matter under the contract.

As in *Coatesville*, School District here failed to obtain the required E & S permit prior to soliciting bids for the Project, affirmatively represented to contractors that Conservation District issued the permit pre-bid, and instructed contractors not to proceed until the permit was issued. N.T. Vol. I at 76, 86–86, 336; Vol. II at 264–65. Citing the issuance of the E & S permit as one delay in a myriad of problems, the trial court concluded it was but "the first element in a cascade of problems that got worse and which [Second Construction Manager] and [School District] could not *or would not* fix." Trial Ct. Op., 12/30/05 at 17 (emphasis added). In addition, the trial court considered two other factors critical: School District's agents' (Construction Managers) failure to issue a comprehensive sequencing schedule until four months after the Project began, and

School District's refusal to adjust the Project completion date. *Id.* at 8, 19. *Coatesville. See also A.G. Cullen Constr., Inc. v. State Sys. of Higher Educ.*, 898 A.2d 1145, 1160 (Pa.Cmwlth.2006) ("[t]he government possess a duty not to act in a way that will hinder or delay a contractor's performance").

■ Moreover, it is disingenuous for School District to argue the contract limits Contractor's claim for damages to an extension of time to complete its work. A request for an extension of time would have been futile. The evidence clearly shows School District terminated First Construction Manager and threatened termination of contractors when presented with the December 1998 extension schedule. Trial Ct. Op., 12/30/05 at 13 ("[Second Construction Manager] bluntly told the contractors that some of them may be fired, and any extensions of the [P]roject were 'non-negoitable.'"); N.T. Vol. I at 261–62.

The trial court did not pen the words "School District interfered with Contractor's work." Nevertheless, the above findings, viewed in a light most favorable to Contractor as verdict winner, support the conclusion that School District failed to act in an essential manner under the contract. For these reasons, we hold that the trial court properly disregarded the contract's exculpatory provisions. *Coatesville; Shenk. See e.g. Gasparini Excavating Co.*

*v. Pa. Tpk. Comm'n,* 409 Pa. 465, 187 A.2d 157 (1963) (owner liable for delays where it instructed contractor to proceed despite non-access to area because of another contractor's work).

## 2. Notice of Claims

■ School District further asserts Contractor failed to timely provide notice of its damages claim pursuant to the contract. The trial court, School District contends, disregarded the contract language requiring Contractor to make a claim for damages within 21 days after the event giving rise to the claim or after the claimant first recognizes the condition giving rise to the claim.[10] Rather, the trial court was "persuaded by [Contractor's] legal argument that quantification of its damages could only be accomplished once the project was finished, and financial analysis could disclose the true losses suffered." Trial Ct. Op., 12/30/05 at 16; N.T. Vol. II at 48.

The trial court's rationale is sound. In December 1998, First Construction Manager and Contractor established a schedule to recover from the early delays. *Two months later,* Second Construction Manager informed all contractors School District abandoned the December 1998 schedule and reinstated the CPM schedule. N.T. Vol. I at 362. The School District's mandate required Contractor to re-sequence its work, hire more workers, and work overtime. As such, the damages caused

---

10. The contract's General Conditions provide, in relevant part:

4.7.3 Time Limits on Claims

Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice.

4.7.7 Claims for Additional Cost

If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work....

4.7.8.1 Claims for Additional Time

If the Contractor wishes to make Claim for an increase in the Contract time, written notice as provided herein shall be given. The Contractor's claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary. (R.R. at 436a–37a).

by inefficient labor and additional payroll could not accurately be assessed until completion of the Project.

■■■ Further, School District had actual notice of Contractor's claims. School District knew the Project was at least two months behind schedule when it hired Second Construction Manager and reinstated the CPM schedule. N.T. Vol. IV at 228–29; Contractor's Ex. 19. However, School District refused to adjust the Project completion date or take other corrective measures. Contractor had to overcome the delays in some manner in order not to breach the contract. It overcame the delays by completing its Phase II fit-out work in six months rather than the originally planned eight months. In doing so, Contractor performed work out of sequence which caused inefficient use of labor.

In *Hoel–Steffen Construction Co. v. United States*, 197 Ct.Cl. 561, 456 F.2d 760 (1972), the government allowed another contractor to occupy the space reserved for a contractor performing ductwork on the St. Louis Gateway Arch. The contractor sued for delay damages; the government argued the contractor failed to provide timely notification of its claims. Reviewing the applicable notice provisions, the federal claims court distinguished between notice of the government's failure to act and notice of money damages. The former notice provision served to apprise the government of the offending conduct and enable it to collect data on the asserted costs increase.

Finding the contractor provided the government with constructive notice of a failure to act, the federal claims court noted the contractor orally complained to the government that other contractors interfered with its work. In addition, the court held the government knew, or should have known, the contractor's complaints triggered its responsibility to remedy the situation. The court, refusing to adopt the government's restrictive interpretation of the notice provisions, explained:

> To adopt the ... severe and narrow application of the notice requirements ... would be out of tune with the language and purpose of the notice provisions, as well as with this court's wholesome concern that notice provisions in contract-adjustment clauses not be applied too technically and illiberally where the [g]overnment is quite aware of the operative facts.

*Id.* at 767–68.

Here, School District was responsible for the delays due to its failure to obtain the E & S permit prior to issuing the notice to proceed. In addition, School District could have avoided many of the delays had it enforced the contractors' duty to submit proposed sequencing schedules or to adhere to time allocations for work. Instead, School District thwarted attempts to account for the delays when it abandoned the December 1998 schedule and reinstated the CPM. *See* Tr. Ct. Op., 12/30/2005 at 8 ("over-riding consideration for [School District] ... was that not a single day of school would be missed"); Vol. I at 359 (Contractor's witness testified, "Everybody [knew] the impact it had on us, and [School District] and [Second Construction Manager] didn't care."); Contractor's Exs. 19; 100; Vol. II at 230–33.

As in *Hoel–Steffen Construction Co.*, School District here clearly knew of the operative facts giving rise to the construction delays and Contractor's claims for accelerated work. Noted above, School District's failure to act caused the delays. Thus, the notice provisions of the contract, albeit informally, were satisfied. *Id.* Furthermore, School District fails to demonstrate any prejudice resulting from Con-

tractor's failure to submit a written claim for damages. School District's argument therefore fails.

### 3. Extra Work

■ In its final claim involving the contract, School District contends Contractor failed to preserve claims for extra work, namely, expenses related to hand excavation of the utility duct bank, relocation of the fence, and providing dumpsters to the roofing contractor. Relying on General Condition 7.1.1 [11] and following, School District asserts Contractor failed to obtain change orders for any of this work, or did so belatedly.

We agree with Contractor that despite its failure to formally request change orders, the trial court properly awarded Contractor monies to compensate for the additional work for two reasons. First, Contractor's bid consultant testified School District demanded the hand excavation work. N.T. Vol. I at 103; Contractor's Ex. 54.

Second, Contractor's vice-president of operations testified Contractor submitted change orders for the dumpsters and fence relocation. N.T. Vol. I at 38, 373; Vol. II at 75; Contractor's Exs. 65 and 67. While the contract contemplates change orders to precede the work, see R.R. 440a–42a, Contractor nevertheless performed the work at School District's direction. Contractor considered School District's verbal directions binding, performed the work, and then followed through with written documentation. N.T. Vol. II at 75–76; Vol. IV at 292 (Contractor had to perform work on change directive regardless of whether it agreed or not).

School District knew of these additional costs as the work involved also impacted the Project delays; thus, it was not materially prejudiced by Contractor's failure to submit notice of its claims in timely fashion. Moreover, School District's representative testified it relied on its interpretation of the contract to direct Contractor to relocate the fence. N.T. Vol. III at 425. The same is true regarding the dumpsters. N.T. Vol. I at 373–75.

■ School District, having directed Contractor to perform the additional work asserting it was required by contract, cannot now disavow liability for costs incurred by claiming Contractor did not have written authorization. *See A.G. Cullen Constr., Inc.* 898 A.2d at 1171 (contractor who performs work beyond scope of contract is entitled to additional compensation); *Derry Twp. Sch. Dist. v. Suburban Roofing Co.*, 102 Pa.Cmwlth. 54, 517 A.2d 225 (1986) (equitable estoppel barred school district from refusing to pay costs incurred where contractor relied on school district's earlier interpretation of the contract documents).[12]

---

11. In relevant part, General Condition 7.1.1 provides:

> Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents. (R.R. at 440a.)

The remainder of Article 7 defines change orders, construction change directives, and minor changes in work. *Id.*

12. We reject School District's argument Section 508 of The Public School Code of 1929, Act of March 10, 1929, P.L. 30, *as amended*, 24 P.S. §§ 5–508 (requiring school board approval for increases or decreases to indebtedness), bars Contractor's claim for payment of additional work. Testimony established School District considered the work part of the contract; thus, further school board approval was unnecessary. Moreover, all five elementary school projects were part of the same bond issue. There is no evidence an increase in this Project price increased

## B. Recovery under Procurement Code

School District also asserts error in the trial court's finding it refused Contractor's payment applications in bad faith. Within this argument, School District further assigns error in the calculation of attorney's fees and interest.

The public contract here is subject to the Procurement Code, specifically Chapter 39. 62 Pa.C.S. §§ 102(a); 3901–3942. Section 3931 entitles a contractor who performs in accordance with the contract to prompt payment by the government agency. 62 Pa.C.S. § 3931. Here, there are three particularly relevant Procurement Code sections. Two sections, Section 3932(c) [13] and 3941(d),[14] require the government agency to pay interest on untimely made progress and final payments. The third section, 62 Pa.C.S. § 3935,[15] author-

izes the award of penalties and attorney's fees against the government agency where it withheld payments due under the contract in bad faith.

### 1. Bad Faith

■■■ In this assignment of error, School District asserts the trial court based its finding of bad faith on matters pertaining to other contractor delays and not to payments due under the contract. The trial court stated School District's bad faith was "most vividly shown by the recognition of delay yet the refusal to do anything about it, other than to threaten the contractors with dismissal." Trial Ct. Op., 12/30/05 at 26. The court also found bad faith in School District's refusal to pay for hand excavation, fence relocation, and dumpsters. *Id.* Further, the trial court

---

School District's indebtedness for all renovations.

13. 62 Pa.C.S. § 3932(c) provides (with emphasis added):

**Interest on progress payments not timely made.**—Except as otherwise agreed by the parties, if any progress payment less the applicable retaining amount as authorized … is not made to a contractor … by the due date established in the contract or subsection (b), *the government agency shall pay to the contractor … in addition to the amount due, interest on the amount due, and the interest shall be computed at the rate determined by the Secretary of Revenue* for interest payments on overdue taxes or the refund of taxes as provided in [The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §§ 806–806.1].

14. 62 Pa.C.S. § 39341(b), relevantly provides (with emphasis added):

[W]here the government agency has issued bonds to finance the project, *interest shall be payable to the contractor at the rate of interest of the bond issue or at the rate of 10% per annum, whichever is less,* but in no event shall the interest payable to the contractor be at a rate of interest less than the legal rate of interest.

15. 62 Pa.C.S. § 3935 provides (with emphasis added):

(a) **Penalty.**—If claim with a court of competent jurisdiction is commenced to recover payment due under this subchapter and it is determined that the government agency, contractor or subcontractor has failed to comply with the payment terms of this subchapter, the *the court may award, in addition to all other damages due, a penalty equal to 1 per month of the amount that was withheld in bad faith.* An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious. An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).

(b) **Attorney fees.**—Notwithstanding any agreement to the contrary, *the prevailing party in any proceeding to recover any payment under this subchapter may be awarded a reasonable attorney fee in an amount to be determined by the court, together with expenses, if it is determined that the government agency, contractor or subcontractor acted in bad faith.* An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.

indicated School District acted in bad faith when it refused to pay for extra materials on the Project it agreed to pay, such as wall pads, metal doors, and replacement interior doors. *Id.* at 27, 517 A.2d 225. As added rationale, the trial court noted School District continually increased the costs associated with completion of the punch list work, while refusing to pursue a claim with Contractor's bonding agent. *Id.*

■ "[Courts] possess great latitude and discretion in awarding attorney's fees when authorized by statute." *A.G. Cullen Constr., Inc.*, 898 A.2d at 1164. As noted, the Procurement Code allows for the imposition of attorney's fees where the government agency's actions are found to be in bad faith. 62 Pa.C.S. § 3935(a). In turn, bad faith is the arbitrary and vexatious withholding of payment. *Id.* The terms "arbitrary" and "vexatious" are not defined by the Procurement Code. Absent a statutory definition of these terms, we must apply their common meaning. 1 Pa.C.S. § 1903.

We recently discussed the term "arbitrary" as used in the Procurement Code in *A.G. Cullen Construction, Inc.* Reviewing case law addressing statutory authorization of attorney's fees for bad faith conduct, we noted the Supreme Court defines "arbitrary" conduct, for purposes of 42 Pa.C.S. § 2503 (relating to arbitrary and vexatious initiation of suits), as that which is based on "random or convenient selection or choice rather [than] on reason or nature." *Id.* at 1165 (citing *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295 (1996)).

In this particular case, School District refused Contractor's Payment Applications Nos. 12, 15, 16, and 17. *See* N.T. Vol. V at 43, 44, 47. Although School District offered reasons for non-payment, the trial court implicitly rejected its defenses.

We conclude there is sufficient evidence to support the trial court's finding of bad faith. For example, Contractor submitted a pay application seeking monies due for installation of metal doors and replacement of wood doors. Vol. II at 16–17; Contractor's Exs. 71, 72. It also sought payment for wall pads installed after substantial completion. N.T. Vol. II at 14–15; Contractor's Exs. 73, 74. Contractor performed this work pursuant to duly executed change orders, but School District refused payment. A review of the appropriate pay applications indicates Contractor sought payment only for the particular work subject to the change order. Contractor's Exs. 72, 74.

Once the parties executed a change order, the work involved is deemed to be pursuant to the contract. R.R. at 440a. School District's defenses to non-payment of these pay applications do not relate to the work involved. Significantly, School District's witness testified Contractor should have been paid for the change orders. N.T. Vol. IV at 430. Thus, School District's failure to pay approved change orders evidences bad faith.

■ Moreover, we agree with the trial court's finding School District's actions regarding the punch list further evidences bad faith. School District arbitrarily added an additional 50% to the anticipated cost of completing each item of work, and estimated at least one hour, at $45/hour, for each item. N.T. Vol. II at 338; Contractor's Ex. 119. These inflated values of the outstanding work demonstrate a lack of fair dealing with Contractor.[16]

16. School District's bad faith is also evidenced by its actions regarding Payment Application No. 12. In this Application, School District withheld $13,000 from Contractor under the Prevailing Wage Act, Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S.

We specifically reject School District's argument that these occurrences do not amount to bad faith as a matter of law, which relies on a Superior Court decision applying the Procurement Code in *Cummins v. Atlas Railroad Construction Co.*, 814 A.2d 742 (Pa.Super.2002). Notably, in *Cummins*, all fact-finders determined no bad faith occurred, and the Superior Court affirmed those determinations.

The *Cummins* decision supports the conclusion that a determination of bad faith is a matter of fact, not a matter of law. Nothing in *Cummins* supports an appellate court's rejection of a fact-finder's express determination of bad faith, which is the result School District urges here.

For these reasons, we affirm the trial court's finding of bad faith as supported by substantial evidence. *Lutheran Home of Topton*, 782 A.2d 1 (Pa.Cmwlth.2001) (where trial court's findings are supported by substantial evidence, they are conclusive on appeal).

### 2. Attorney's fees

 Citing Section 3935(b) of the Procurement Code, School District further asserts error in the trial court's award of Contractor's attorney's fees. Specifically, School District alleges the Procurement Code limits the recovery of attorney's fees to those incurred securing payments under the contract. It asserts the court did not attempt to apportion Contractor's fees between claims for nonpayment under the contract and its acceleration claim. In addition, School District complains the trial court awarded Contractor nearly $10,000 more in attorney's fees than for payments under the contract.

 Initially, we note, parties are generally not entitled to an award of counsel fees from an adverse party in the absence of express statutory authorization, a clear agreement between the parties, or the application of a clear exception. *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022 (Pa.Super.2005), *appeals denied*, 589 Pa. 722, 907 A.2d 1103 (2006). Here, there is a statutory right to attorney's fees. 62 Pa. C.S. § 3935(b).

In resolving this claim, the trial court explained:

I am inclined to grant relief under [62 Pa.C.S. § 3935], but the calculation thereof leads me to a different conclusion than that reached by [Contractor].

§§ 165–1–165–17, after receiving notice from the Department of Labor & Industry (Department) of an investigation into a subcontractor for possible violations of the Prevailing Wage Act. Bad faith is evidenced for both legal and factual reasons.

Legally, in 2004 this Court held the Department cannot require the withholding of funds owed to a general contractor on public works projects for a subcontractor's violation of the Prevailing Wage Act when no further payment is due from the general contractor to the subcontractor. *Worth & Company, Inc. v. Department of Labor & Industry*, 857 A.2d 727 (Pa.Cmwlth.2004). Although the instant litigation commenced prior to our decision in *Worth*, School District's failure to abide by that decision when rendered further evidences bad faith.

Factually, School District withheld wages from Contractor based on Department's investigation into subcontractor Sadowski. N.T. Vol. II at 125–126; R.R. at 819a. In refusing to certify payment applications based on outstanding subcontractor issues, School District's witnesses did not name Sadowski as a subcontractor with whom Contractor had unresolved issues. N.T. Vol. IV at 28; Vol. V at 43, 47. Thus, School District should have released the withheld wages in accord with *Worth*. The fact School District believed Contractor breached the agreement and owed School District damages does not negate its obligation to release the withheld wages. The Prevailing Wage Act is to protect the worker, and cannot be used to offset a breach of contract claim.

*[School District] points out that all of the legal work done did not apply to these claims, and discounted some of the time not properly attributed to this case. Further, [Contractor] changed counsel mid-stream. Thus, some costs were extraneous to that which was ultimately tried before me,* and the $165,000 claimed by [Contractor], to the date of trial, cannot all be attributed to it. *I am persuaded by this argument,* and find only 2/3 of the claim by [Contractor] should be attributed to [School District].

Trial Ct. Op., 12/30/05 at 26 (emphasis added). A fair reading of the trial court's order illustrates the court accepted School District's argument that apportionment is appropriate. The award, although not providing exact calculations, ultimately declares Contractor is entitled to recover only two-thirds of the fees requested. As such, we reject the contention that the trial court departed from the statutory basis for award of attorney's fees.

Moreover, the award of attorney's fees in excess of recovered damages is not unprecedented. In *Mountain View Condominium Association v. Bomersbach,* 734 A.2d 468 (Pa.Cmwlth.1999), we affirmed an attorney's fees award far in excess of the damages recovered. The appellant in *Mountain View* refused to pay condominium fees. In suing to collect the past due fees, the condominium association incurred nominal attorney's fees; however, the appellant refused to pay attorney's fees pursuant to the association's governing rules. A battle raged on and, in the end, the association incurred over $46,000 in attorney's fees to collect less than $3,500 in association fees. The court of common pleas awarded the association the full attorney's fees incurred.

Rejecting the appellant's claims the fees were unreasonable, we noted the rules governing the parties' relationship specifically provided an award of fees, and therefore, the association was not required to accept less than the full sum to which it was entitled. The defensive manner in which the appellant waged battle over her contractual obligations supported the award of attorney's fees.

School District here refused to tender payments due under the contract in bad faith. Thus, Contractor's entitlement to attorney's fees under the Procurement Code is clear. 62 Pa.C.S. § 3935(b). In addition, the trial court accepted School District's position not all fees were recoverable, and accordingly adjusted the award. As such, no abuse of discretion is apparent.

### 3. Expenses

We do agree, however, the trial court erred in awarding Contractor expert witness fee expenses. Once again, the general rule is that each party to a lawsuit is responsible for the payment of its own expenses and counsel fees. *Lucchino v. Commonwealth,* 570 Pa. 277, 809 A.2d 264 (2002). Notwithstanding, there is statutory authorization for expenses in the Procurement Code. 62 Pa.C.S. § 3935(b).

We thoroughly reviewed Contractor's expert witness's testimony and report, and we find it does not address issues pertaining to the collection of monies due under the contract. The expert's testimony is limited strictly to the calculation of Contractor's damages sustained as a result of work acceleration. N.T. Vol. III at 119–302. The Procurement Code, limiting expenses to those incurred seeking recovery for sums due under a public contract, does not authorize the award of expenses here. 62 Pa.C.S. § 3935(b). Accordingly, we reverse the award of Contractor's expert witness expenses. *Cf. Smalls v. Pittsburgh–Corning Corp.,* 843 A.2d 410 (Pa.Super.2004) (remittitur justified where

verdict is plainly excessive, exorbitant, and beyond what the evidence warrants, or where the verdict results from partiality, prejudice, mistake or corruption). This results in a reduction of $43,000 from the judgment.

### 4. Interest

#### a. Prejudgment

■ As noted above, the Procurement Code mandates the payment of interest on any outstanding progress and final payments due a contractor. 62 Pa.C.S. §§ 3932(c), 3941(b). There are four payment applications at issue: Payment Application No. 12 (prevailing wages); No. 15 (unpaid invoices including retainage); and Nos. 16 and 17 (additional materials).

In post-trial motions, School District challenged the trial court's interest calculations as contrary to the contract and the Procurement Code. Contractor also claimed error in the interest calculation of one payment application.

For its part, the trial court accepted Contractor's interest calculations contained in its proposed findings of fact and conclusions of law. Trial Ct. Op., 12/30/05 at 29. In denying the parties' post-trial motions, the trial court declined to review the interest calculations, envisioning further proceedings after appellate review. Trial Ct. Op., 7/11/06 at 5.

With respect to the interest calculations, Contractor computed interest on Payment Application No. 12 pursuant to 62 Pa.C.S. § 3932, which requires interest to be computed at the rate determined by the Secretary of Revenue under the Fiscal Code. Contractor's Br. at 26. We independently verified the interest rates utilized to calculate interest on Payment Application No. 12.[17]

For Payment Applications Nos. 15–17, Contractor computed interest at 10% per year for each year the Application remains unpaid. Contractor's Br. at 27. Asserting that such an interest rate has no basis in the contract documents, School District requests either judgment in its favor or a new trial. School District's Br. at 43. However, School District does not quantify the alleged error and, as a result, fails to demonstrate the required prejudice needed for an award of a new trial. *McManamon v. Washko*, 906 A.2d 1259 (Pa.Super.2006) (two step evaluation includes determination of whether mistake provides sufficient basis for granting new trial).

Moreover, because of timing (last applications, sequential, submitted after substantial completion), status (all unpaid) and complexity, it is unclear whether Payment Applications Nos. 15–17 collectively involve final payment due after substantial completion. Mindful of our obligation to consider the evidence in a light most favorable to the verdict winner, we conclude that the trial court could have found these payment applications to be for an aggregated final payment due after substantial completion which accrued interest at the annual rate of 10%. Supplementary Condition 9.3.10, R.R. at 484a.[18] Accordingly, we discern no

---

17. *See* 28 Pa. B. 6351 (December 26, 1998); 29 Pa. B. 6377 (December 18, 1999); 30 Pa. B. 6494 (December 16, 2000); 31 Pa. B. 6990 (December 22, 2001); 32 Pa. B. 6220 (December 14, 2002); and, 34 Pa. B. 448 (January 14, 2004).

18. Supplementary Condition 9.3.10, provides (with emphasis added):

> *The final payment due the Contractor for the contracting body after Substantial Completion of the Contract shall bear interest* at the rate of 6% per annum for all Contracts with provisions for retainage, such interest to begin after the date that such payment shall become due and payable to the Contractor; *provided, however, that where the contracting body has issued bonds to finance*

reversible error in the award of prejudgment interest.

### b. Post judgment

■ At oral argument, Contractor requested a remand to the trial court for calculation of interest and attorney's fees post-judgment. Sections 3932(c), noted above, provides that interest shall be computed in accord with the Fiscal Code where timely progress payments are not made. Likewise, Section 3941 provides interest on untimely final payments.

In granting Contractor's request, we are guided by Chapter 17 of the Procurement Code, 62 Pa.C.S. § 1701–51, which governs legal and contractual remedies. Specifically, 62 Pa.C.S. § 1751, pertaining to interest, provides in relevant part and with emphasis added:

> Interest on amounts ultimately determined to be due shall be payable at the statutory rate applicable to *judgments from the date the claim was filed* with the contracting officer.

Our Board of Claims interprets Section 1751 to authorize an award of post-judgment interest until such time as the judgment is paid in full. *See The Farfield Co. v. Dep't of Gen. Servs.*, 2007 Pa. Bd. Cl. Lexis 1 (Dkt. No. 3788, Pa.Bd.Cl.2007); *Nello Constr. Co., a Div. of Gito, Inc. v. Dep't of Gen. Servs.*, 2006 Pa. Bd. Cl. Lexis 1 (Dkt. No. 3661(ALL), Pa. Bd. Cl.2006). And, this Court approved the Board's interpretation. *E.g., Swindell–Dressler Co. v. Dep't of Transp.*, 50 Pa.Cmwlth. 464, 413 A.2d 38 (1980); *Pa. Dep't of Transp. v. DePaul*, 29 Pa.Cmwlth. 447, 371 A.2d 261 (1977); *Dep't of Highways v. S.J. Groves & Sons Co.*, 20 Pa.Cmwlth. 526, 343 A.2d 72 (1975); *Gen. State Auth. v. Loffredo*, 16 Pa.Cmwlth. 237, 328 A.2d 886 (1974); *Dep't of Prop. & Supplies v. Berger*, 11 Pa.Cmwlth. 332, 312 A.2d 100 (1973).

Although Contractor's claims were not brought before the Board, the rationale for post-judgment interest remains the same. Sections 3935(c) and 3941(b) authorize interest. By authorizing interest against a government agency, fairness requires that interest continue to accrue until the underlying award is satisfied. *Berger.* In view of the remedies available to recover unsatisfied contractual obligations, substantial delays may be encountered after an award and before payment. Here, School District wrongfully deprived Contractor use of the funds, some since 1999. Thus, we conclude Contractor is entitled to interest until such time as School District satisfies the judgment entered against it.

### C. Damages

In its third assignment of error, School District contends the trial court speculated as to damages because Contractor's evidence failed to apportion damages between those sustained as a result of School District's actions and those caused by other contractors. It further claims error in the trial court's acceptance of the "measured mile" theory of recovery.

#### 1. Additional Delays

■ School District points to the trial court's recognition that plumbing delays impacted Contractor's work. Trial Ct. Op., 12/30/05 at 12. However, Contractor

the project, interest shall be payable to the Contractor at the rate of interest of the bond issue or at the rate of 10% per annum, whichever is less. (R.R. 484a).

Testimony at trial established that the School District issued bonds to finance the project, but testimony did not clearly establish the interest rate, thereby allowing the factfinder to apply the default 10% interest rate. Other testimony at trial established that this contractual provision was not amended to reduce the applicable interest rate to 0%, as contended by School District. N.T. Vol. II at 362.

failed to present evidence apportioning its damages between delays caused by School District and those caused by the plumbing contractor. School District asserts this is fatal to Contractor's claims, suggesting the trial court guessed as to how the delays affected Contractor's work.

A careful and thorough examination of the record, however, does not support School District's position. Although the trial court stated the plumbing contractor's work took an inordinate amount of time, Trial Ct. Op., 12/30/05 at 18, the court's overall conclusion was that School District bore sole responsibility for the delays. Starting with the late notice to proceed and E & S permit, School District caused or allowed obstacles to interfere with the smooth progression of work. Also, its representatives, First and Second Construction Managers, failed to devise a comprehensive sequencing schedule. School District neither enforced the contract provisions requiring contractors to submit proposed schedules, nor sanctioned other contractors for dilatory performances. The trial court found that these were illustrative of the numerous problems which "[Second Construction Manager] and [School District] *could not or would not* fix." *Id.* at 17 (emphasis added).

Moreover, both the pleadings and the claims of the parties dispel the notion that apportionment of damages was required here. Notably, Contractor did not raise claims against the plumbing contractor, and its complaint does not aver plumbing delays interfered with its work. R.R. 13a–46a. Rather, Contractor alleged its damages resulted from School District's actions. In addition, Contractor did not allege School District and the plumbing contractor acted in concert resulting in the alleged harms. Indeed, Contractor elicited testimony regarding plumbing delays only to rebut allegations it was responsible for construction delays. N.T. Vol. I at 124–125. Further, School District did not join the plumbing contractor as an additional defendant asserting the plumbing contractor's liability for Contractor's damages. Under these circumstances, Contractor had no burden to assign a damage amount to each particular delay.

## 2. Damages Calculation

■ School District's second issue focusing on damages pertains to Contractor's calculation of damages utilizing a "measured mile" analysis. The trial court found the approach persuasive, and this is the first opportunity for a Pennsylvania appellate court to consider it.[19]

■ Preliminarily, we note, the law does not require that proof of damages must conform to the standard of mathematical exactness. The law simply requires the claim be supported by a reasonable basis for the calculation. *Vrabel v.*

19. Three Pennsylvania Board of Claims decisions acknowledge the measured mile analysis. In *Marsico Corp. v. State Sys. of Higher Education,* 2004 WL 2372054 (Dkt. No. 3438, Pa.Bd.Cl.2004), the board of claims permitted expert testimony offering a measured mile analysis where it was contained in the expert's pretrial report. In *G.M. McCrossin, Inc. v. Department of General Services,* 2002 WL 448677 (Dkt. No. 2962 Pa. Bd. Cl.2002), the measured mile approach did not provide a basis for recovery where the evidence was insufficient to perform an analysis. *See also*

*Angelo Iafrate Consr. Co., Inc. v. Pa. Tpk Comm'n,* 2006 Pa. Bd. Cl. Lexis 4 (Dkt. No. 3654, Pa.Bd.Cl.2006) (extensive delays made measured mile analysis impossible).

Also, the Philadelphia County Common Pleas Court examined the measured mile approach in *Tony DePaul & Son v. City of Philadelphia,* 24 Phila. Co. R. 405 (C.P.Pa.1992). It found the analysis too speculative and imprecise to support recovery because the expert compared only one type of work performed and did not correlate delays in that work to other project delays.

*Commonwealth,* 844 A.2d 595 (Pa.Cmwlth. 2004). If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation. *Kaczkowski v. Bolubasz,* 491 Pa. 561, 567, 421 A.2d 1027, 1030 (1980). The burden of proving damages is on the plaintiff, and the question of damages may not be submitted to the factfinder if the plaintiff fails to meet this burden. *Vrabel.*

■■■ Contractor utilized the measured mile analysis to calculate its damages resulting from its acceleration of work. Stated simply, this approach compares the cost of completing work not subject to delay or acceleration with costs of completing work during a period of impact, the difference representing the measure of damages. *Aetna Cas. Surety Co. v. The George Hyman Constr. Co.,* No. 93–CV–4570, 1998 U.S. Dist. Lexis 22627 (E.D.Pa. May 15, 1998). The work compared need not be exactly the same, as the ascertainment of damages for labor inefficiency is not susceptible to absolute exactness. *Clark Concrete Contractors, Inc. v. Gen. Servs. Admin.,* 99–1 Bd. Contract Appeals ¶ 30280, 1999 WL 143977 (Gen. Servs. Bd. Contract Appeals 1999). When a contractor alleges a loss of productivity, the measured mile approach is the preferred method of computing damages. *Aetna Cas. Surety Co.; cf. Angelo Iafrate Constr. Co., Inc. v. Pa. Tpk. Comm'n,* 2006 Pa. Bd.

Cl. Lexis 4 (Dkt. No. 3654, Pa.Bd.Cl.2006) (experts agreed measured mile analysis is ideal method to determine loss of productivity).

■■■ Here, School District challenges the measured mile analysis as nothing more than the disfavored total cost approach, which subtracts the estimated costs under the contract from the actual costs incurred. *John F. Harkins Co., Inc. v. Sch. Dist. of Phila.,* 313 Pa.Super. 425, 460 A.2d 260 (1983).[20] It also argues Contractor's analysis is based on erroneous assumptions regarding use of manpower; does not compare similar tasks performed by similar workers; and assumes labor charges for work not requiring physical labor.[21]

Contractor's witness, an expert in project controls and claims analysis (claim expert), explained his measured mile analysis included an earned value factor since the Project was delayed from the beginning and the work could not be easily compared. N.T. Vol. III at 157, 231. According to claim expert, this comports with industry standards. *Id.* at 158, 460 A.2d 260.

Claim expert then described his methodology. Dividing the Project into two time periods, claim expert compared the percentage of work completed in each period to the number of labor hours utilized. During the first period, Contractor expended 4,279 hours to complete 41.76% of

---

20. The total cost method of calculating damages requires a showing that: the nature of the losses makes it impossible or highly impracticable to determine the losses with a reasonable degree of certainty; the bid or estimate was realistic; the actual costs were reasonable; and, the party seeking relief was not responsible for the added expenses. *John F. Harkins Co., Inc. v. Sch. Dist. of the City of Phila.,* 313 Pa.Super. 425, 460 A.2d 260 (1983).

21. School District challenges the data upon which Contractor's expert witness calculated Contractor's damages. Such challenge, however, goes to the weight and credibility afforded the expert's testimony, over which the factfinder has exclusive authority. *Cf. Samson Paper v. Workers' Comp. Appeal Bd. (Digiannantonio),* 834 A.2d 1221 (Pa.Cmwlth.2003) (failure to review complete medical records goes to weight, not competency, of expert's testimony).

the Project. Had Contractor been able to work at the same pace during the second period, it would have expended an additional 5,967 hours to complete the remainder of the Project. However, the Project's total hours equaled 19,645 hours; therefore, Contractor used 15,366 hours to complete the second period (19,645–5,967). Thus, the inefficient labor hours amounted to 9,366 (15,366–5,967 = 9,366). To arrive at an earned value factor of 61%, claim expert divided the inefficient labor hours by the number of hours worked in the second period (9,366 ÷ 15,366 = 61%).

Utilizing the earned value factor, claim expert then determined the number of inefficient labor hours Contractor and its subcontractor each experienced. The results were multiplied by the applicable hourly rates of pay. In total, claim expert valued Contractor's damages at $294,000.

Claim expert's testimony, accepted as credible here, is legally sufficient to establish the extent of Contractor's damages. *See Pa. State Univ./PMA Ins. Group v. Workers' Comp. Appeal Bd. (Hensal),* 911 A.2d 225 (Pa.Cmwlth.2006), *appeal denied,* 593 Pa. 743, 929 A.2d 1163 (2007). As stated, damages need not be calculated with mathematical precision; rather, all the law requires is a reasonable basis for the calculation. *Vrabel.* Moreover, the trial court did not blindly accept claim expert's valuation. The trial court reduced Contractor's asserted damages upon a broad finding the delays did not impact some areas of work as severely as others. *Id.* at 21.

■ It is important to note that School District's expert conceded Contractor experienced increased labor expenses of $137,979. Trial Ct. Op., 12/30/05 at 20. This concession is especially significant in light of innumerable cases addressing the law of damages, which hold that damages are considered speculative only if there is

uncertainty concerning the existence of damages rather than the ability to precisely calculate the amount or value of damages. *E.g., Kituskie v. Corbman,* 552 Pa. 275, 714 A.2d 1027 (1998); *Carroll by Burbank v. Phila. Housing Auth.,* 168 Pa. Cmwlth. 275, 650 A.2d 1097 (1994) (damages are speculative if uncertainty concerns fact of damages, not amount).

In sum, because the existence of damages was established, because the measured mile analysis offers a reasonable basis upon which damages can be calculated, and because the trial court found this approach persuasive, we discern no merit in School District's assertions.

### D. Counterclaim against Contractor

■ Unsatisfied with the damages awarded on its counterclaim against Contractor, School District further contends the trial court erred by basing its award on estimates, rather than the actual costs School District incurred to complete Contractor's punch list work. For interior punch list items, School District sought damages in the amount of $39,171. School Dist. Ex. HHH.

The trial court awarded School District $34,000 on its counterclaim, reducing Contractor's award by that amount. Trial Ct. Op., 12/30/05 at 29. The $34,000 award represents the punch list generated at the time School District accepted the Project. *Id.* at 25. Showing distaste for School District's conduct, the trial court offered multiple reasons for its reduction on the counterclaim. First, School District increased its damages every time a new punch list was generated, which was excessive because punch lists are designed to cover the final finishes on the Project. *Id.* at 23. Second, School District disregarded the contract provisions making the punch list process tripartite between it, Contractor and Architect. *Id.* Third, School Dis-

trict added an arbitrary 50% to the hourly rate assigned the punch list work. *Id.* at 23–24. Finally, School District failed to pursue a claim with Contractor's bonding agent, which would have provided another contractor to complete the unfinished work. *Id.*

■ In a breach of contract action, a party is entitled to recover whatever damages it suffered, provided the damages were such that would naturally and ordinarily result from the breach, or the damages were reasonably foreseeable and within the contemplation of the parties at the time of contracting and can be proved with reasonable certainty. *Ferrer v. Trustees of Univ. of Pa.*, 573 Pa. 310, 825 A.2d 591 (2002). The duty of assessing damages is within the province of the factfinder, whose decision is not disturbed on appeal absent a showing the amount awarded resulted from prejudice, partiality or corruption, or the award bears no reasonable relationship to the loss suffered. *McManamon.*

The trial court here cogently explained its reasons for reducing School District's counterclaim. School District alleged losses of $39,000, but recovered $34,000. The sums are not so disproportionate to support a conclusion the award resulted from prejudice, partiality or corruption. *Id.* Accordingly, we discern no error in the trial court's counterclaim award.

### E. Hearsay

■ School District further asserts error in the trial court's admission of hearsay testimony. More particularly, the trial court allowed Contractor's bid consultant/project engineer to testify regarding the *impact* of the construction delays on the Project. Contractor's project engineer worked predominantly in Contractor's office and visited the Project site twice. N.T. Vol. I at 153. Thus, School District asserts, Contractor's project engineer's testimony regarding the effect of the Project delays was based on out-of-court conversations with workers.

■ The admission or exclusion of evidence is within the sound discretion of the trial court and, reviewing a challenge to the admissibility of evidence, we will only reverse the trial court upon a showing that it abused its discretion or committed an error of law. *McManamon.* To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Id.* Where there is other evidence to support a finding of fact, the admission of hearsay evidence is harmless error. *Muehlieb v. City of Phila.*, 133 Pa.Cmwlth. 133, 574 A.2d 1208 (1990).

Contractor asserts other evidence establishes the impact of the construction delays. We agree. In addition to those exhibits Contractor identified as establishing delays attributable to fence removal, asbestos abatement, and hand excavation of the duct bank, there is testimonial evidence establishing the impact of all the Project delays. *See* Contractor's Exs. 54, 55, 64, 75, and 76.

Contractor's vice president of operations testified regarding late issuance of the notice to proceed and E & S permit, and School District's failure to inform contractors when Township issued a building permit. N.T. Vol. I at 336, 338. He further testified regarding re-sequencing of work due to asbestos abatement and changes to the sedimentation pond. *Id.* at 347, 360, 574 A.2d 1208. Despite notification of these delays, Second Construction Manager informed Contractor that Phase II had to be completed in accord with the CPM or School District would either withhold payment or terminate the contract. *Id.* at 349, 574 A.2d 1208; 359–362.

Furthermore, Contractor's claim expert, a certified construction costs consultant, testified without objection the Project delays peaked in mid-February 1999 at 74 calendar days, and that these delays impacted the Project. N.T. Vol. III at 132. In particular, Contractor was required to "accelerate and compress [its] work in the fit-out" so as to complete eight months' work in six months. *Id.* at 133, 574 A.2d 1208. The testimony of these witnesses is corroborated by Contractor's payroll records. Exs. 121, 122.

School District does not challenge the fact that these events occurred, that it refused to extend the Project completion date, and that Contractor substantially completed the Project on time. As fact-finder, the trial court could reasonably infer from these circumstances that School District's actions negatively impacted Contractor's ability to work, which in turn, required Contractor to accelerate its work to complete the Project on time. *Solomon v. Workers' Comp. Appeal Bd. (City of Phila.)*, 821 A.2d 215 (Pa.Cmwlth.2003) (fact-finder may draw reasonable inferences from the evidence presented; on appeal, those conclusions must be reviewed in the light most favorable to the prevailing party).

As School District failed to demonstrate resulting prejudice, and there is other competent evidence supporting Contractor's claims School District's actions negatively impacted Project construction, no error is apparent.

### F. Cross-claim against Architect

■ In its final assignment of error, School District asserts the trial court erred by finding Architect was not responsible for the construction delays. In its cross-claim against Architect, School District alleged Architect breached its contractual duty not to delay the construction project and negligently performed its work. R.R. at 129a–32a.

■ We need not address School District's allegations in detail. In *Guy M. Cooper, Inc. v. East Penn School District*, we reiterated the principle that expert testimony is required where the subject of inquiry is one involving special skills or training not common to the ordinary person. *Id.* (citing *Cipriani v. Sun Pipe Line Co.*, 393 Pa.Super. 471, 574 A.2d 706 (1990)). In a suit against an architect for negligence, expert testimony is required to prove the standard of care, and it is usually required to prove the failure to meet the standard of care and causation. *Guy M. Cooper, Inc.; Tennis v. Fedorwicz*, 140 Pa.Cmwlth. 7, 592 A.2d 116 (1991). To prove breach of contract, School District must show Architect breached a duty imposed by the contract and such breach proximately caused Contractor's damages. *Tech. Based Solutions, Inc. v. Electronics College, Inc.*, 168 F.Supp.2d 375 (E.D.Pa. 2001).

Here, School District, claiming Architect was responsible for the construction delays,[22] failed to present *any* testimony regarding Architect's standard of care under the contract, or that Architect's conduct fell below any standard. In addition, there is no testimony establishing Architect failed to respond to requests for information or submittals in accord with any contractually imposed time limitations. Because School District failed to present expert testimony to meet its burden of proof, the trial court properly ruled in favor of Architect on the cross-claim.

---

**22.** More specifically, School District asserts Architect was responsible for delays attributable to the E & S permit, fence relocation, and asbestos.

## IV. Conclusion

In summary, the esteemed trial judge, the Honorable Timothy Patrick O'Reilly, exhibited noteworthy equanimity and perspicuity in disposing of this complex litigation. For reasons set forth more fully above, we reverse only the award of Contractor's expert witness expense, and we affirm in all other respects. Additionally, we remand this matter for further calculation of interest and attorney's fees pursuant to the Procurement Code.

### *ORDER*

AND NOW, this 30th day of November, 2007, the order of the Allegheny County Court of Common Pleas is **AFFIRMED** in part and **REVERSED** in part. The order is **REVERSED** to the extent the Court awarded James Corporation expert witness expenses. In all other respects, the Court's order is **AFFIRMED**. As a result, the judgment of $524,087.75 is **MODIFIED** to $481,087.75.

This matter is **REMANDED** to the Court for further calculation of interest and attorney's fees consistent with the foregoing opinion. Jurisdiction is relinquished.