# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Trinity Contracting, Inc. | : |
| | : No. 523 C.D. 2015 |
| v. | : Argued:  November 16, 2015 |
| | : |
| Municipal Sewage Authority of | : |
| the Township of Sewickley and | : |
| Gibson-Thomas Engineering Co., Inc., | : |
| | : |
| Appellants | : |

| | |
|---|---|
| Trinity Contracting, Inc., | : |
| | : No. 524 C.D. 2015 |
| Appellant | : Argued:  November 16, 2015 |
| | : |
| v. | : |
| | : |
| Municipal Sewage Authority of | : |
| the Township of Sewickley and | : |
| Gibson-Thomas Engineering Co., Inc. | : |

BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
                    HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  December 15, 2015

The Municipal Sewage Authority of the Township of Sewickley (Authority) and Gibson-Thomas Engineering Company, Inc. (Gibson) (together, Appellants) appeal from the December 22, 2014, order of the Court of Common Pleas of Westmoreland County (trial court) denying their post-trial motions.  Trinity

Contracting, Inc. (Trinity) has also cross-appealed from the trial court's December 22, 2014, order denying its post-trial motion.[1] We affirm.

In 2012, Trinity filed a complaint against Appellants, alleging, *inter alia*, claims for breach of contract and negligent misrepresentation relating to the construction of a sewage treatment plant (Project) in Sewickley Township, Pennsylvania. Sewickley Township commissioned the Authority to finance, plan, and construct a public sanitary sewer system. The Authority entered into a contract with Gibson to design the Project, perform the engineering work, and oversee the Project.

Gibson hired Dr. James Hamel as its geotechnical consultant for the Project. On March 28, 2007, Dr. Hamel wrote a letter to Gibson identifying five geotechnical problems with the Project site: (1) surface subsidence from abandoned mining operations; (2) total and differential soil settlement from surface mining; (3) landslides in excavated slopes on the east side of the site; (4) mine drainage from surface and underground mining operations; and (5) dewatering.

Thereafter, Gibson hired Professional Service Industries, Inc. to perform boring work and prepare a geotechnical engineering services report (Geotechnical Report) for the Project. Gibson completed its site design and Project layout in August 2007. After receiving the Geotechnical Report in January 2008, Gibson did not change the Project design or layout.

---

[1] The appeals have been consolidated for disposition in this court.

2

The Authority put the Project out for bid on March 6, 2009. The Project was solicited as a "plan-and-spec" project, meaning that Gibson completely designed the Project, and interested bidders were instructed that if they followed Gibson's plans and specifications, they could successfully complete the Project. Gibson did not supply a copy of the Geotechnical Report to prospective bidders.

In August 2009, Gibson awarded Trinity the construction contract (Contract) in the amount of $4,872,648.40. The scope of Trinity's work included performing the general and mechanical construction necessary for a complete sewage treatment plant. Planned activities included subsurface mine grouting, pressure grouting, extension of the water lines, and construction of the sanitary sewer force main. Under the Contract, Trinity agreed to substantially complete the work by November 10, 2010.

After construction began, Trinity and its subcontractors encountered unforeseen, subsurface conditions and geotechnical difficulties at the site, which required Gibson to modify the Project design and layout. Throughout the course of the Project, the Authority and Trinity entered into five Change Orders, which resulted in several site redesigns and eventually increased the Contract amount to $5,362,627.79. The Change Orders also moved the substantial completion date to February 25, 2011.

By letter dated January 5, 2012, Gibson notified Trinity that its work was deemed substantially complete on November 8, 2011, and, as a result, Gibson

was assessing liquidated damages against Trinity in the amount of $210,050. Trinity filed the instant suit against Appellants on January 27, 2012.

In March 2014, the trial court held a seven-day, non-jury trial, after which the parties submitted proposed findings of fact and conclusions of law. On September 30, 2014, the trial court entered judgment in favor of Trinity and against Appellants in the amount of $1,049,011.63[2] plus $18,140.39 in interest, with interest accruing at a rate of $17.70 per day until the underlying award is satisfied. The trial court also found in the Authority's favor with respect to Trinity's counterclaim for bad faith. Appellants and Trinity filed post-trial motions, which the trial court denied on December 22, 2014. These appeals followed.[3]

### Appellants' Appeal

Appellants first assert that the trial court erred in concluding that the Authority breached its contract with Trinity by failing to give Trinity additional time and money that was not contemplated by the Change Orders. Appellants claim that because the Contract documents, including the Change Orders, addressed all of the issues that arose during the course of the Project, the Authority properly denied Trinity's requests for additional time and money. We disagree.

---

[2] This amount included the contract balance of $325,288.83; schedule-related damages of $359,785.54; and additional work-scope damages of $363,937.26. (Trial Ct. Order, 9/30/14, at 1.)

[3] Our review of an order denying post-trial motions is limited to determining whether the trial court abused its discretion or committed an error of law. *Wright v. Denny*, 33 A.3d 687, 688 n.2 (Pa. Cmwlth. 2011).

4

We conclude that the trial court correctly determined that the language contained in the Contract and Change Orders, when read together, constituted a reservation of rights to additional compensation. The Contract stated that the Contract times and/or price "will be equitably adjusted" if the existence of differing subsurface or physical conditions at the site cause an increase or decrease in Trinity's costs or the time required to perform the work. (Trial Ct. Op. at 9 (citing Section 4.03.C of the Contract).) In addition, the Change Orders expressly "exclude[d] any and all work not specifically listed above." (*Id.* at 10.) The trial court concluded that by this language, Trinity reserved its right to request equitable adjustments to the Contract price and times at a later date due to unforeseen, differing site conditions.[4] We find no error.

Moreover, the evidence showed that Trinity incurred a significant amount of additional work and costs as a result of Gibson's Project redesigns, which fell outside the scope of work described in the Change Orders. Thus, the trial court

---

[4] The trial court explained:

> To the extent that language of the contract or change orders was vague, it was so necessarily, as the parties were encountering unknown issues and could not insert values for items such as the additional number of days it would take to complete certain tasks, or the additional costs, duties and obligations to be undertaken in the event that unforeseen conditions arose. In other words, the language of the contract was not vague, but rather drafted with the foresight that unanticipated problems often arise during construction, and in such events, it is sometimes wise for the parties to evidence their desire to complete the project nonetheless. This is in fact what was contemplated by the contract here at issue. Further, this was drafted with an eye toward providing fairness to both parties: fair compensation to Trinity in exchange for the promise of fair completion of the project in spite of unanticipated difficulties.

(Trial Ct. Op. at 11.)

correctly determined that the Authority breached the Contract by failing to equitably adjust the Contract time and price to account for delays and costs incurred by Trinity due to unforeseen site conditions.

Next, Appellants contend that the trial court erred in concluding that Gibson negligently misrepresented geotechnical information to Trinity. We disagree.

In *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 287 (Pa. 2005), the Pennsylvania Supreme Court held that a building contractor can maintain a claim for negligent misrepresentation against a design professional without privity of contract, stating:

> [W]e hereby adopt Section 552 [of the Restatement (Second) of Torts] as the law in Pennsylvania in cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information.

Here, the evidence established that Gibson, the Project design professional, negligently misrepresented the site conditions to Trinity. While it is true that Gibson did not possess the Geotechnical Report until after it had finalized the initial Project design, that fact does not undermine the trial court's finding of negligence. Gibson had actual notice of the geotechnical data 14 months before the bid solicitation, yet it failed to revise the Project design in light of that data. Gibson represented to Trinity that the Project could be constructed as originally designed,

6

despite knowing that the Geotechnical Report showed otherwise. Contrary to Appellants' assertion, Trinity could not have conducted its own independent review of the geotechnical data before bidding on the Project because Gibson failed to include the Geotechnical Report in the Contract documents. In any event, it was not Trinity's burden to independently verify the representations Appellants made to Trinity during the bidding process before Trinity could rely on such information, and Appellants offer no legal support for such an argument.

Finally, Appellants assert that the trial court erroneously concluded that the Authority was not entitled to liquidated damages, even though Trinity did not substantially complete the work within the Contract time. A liquidated damages clause "ensures recovery in cases where computation of actual damages would be speculative." *A.G. Cullen Construction, Inc. v. State System of Higher Education*, 898 A.2d 1145, 1162 (Pa. Cmwlth. 2006). The party seeking to enforce a liquidated damages clause has the burden of showing that the contract work was not completed by the agreed-upon date and that liquidated damages are due and owing. *Id.* The burden then shifts to the contractor to show that any delays were excusable and that the contractor should be relieved of all or part of the damages assessed. *Id.*

Here, the trial court found that Trinity "acted with due diligence in attempting to complete the contract on time, in spite of difficulties encountered at the site," and that Trinity "made efforts to mitigate damages." (Trial Ct. Op. at 9-10.) The Project delays were attributable to unforeseen site conditions that required extra work of Trinity. We agree with Trinity that this case is similar to *Department of Transportation v. Cumberland Construction Company*, 494 A.2d 520 (Pa. Cmwlth.

7

1985).  In *Cumberland*, this court held that the Department of Transportation (DOT) was not entitled to retain delay damages from the amount due to Cumberland Construction Company under a construction contract because:

> [t]he record clearly shows that any delay for which liquidated damages were assessed by [DOT] were properly attributable to extra work ordered by [DOT] and unforeseen conditions encountered at the job site for which Cumberland is not responsible and of which [DOT] was aware but failed to reveal to Cumberland.

*Id.* at 524.  As in *Cumberland*, the delays here were caused by unforeseen site conditions about which Appellants were aware but failed to reveal to Trinity before the Project.  Because the evidence showed that Trinity was not responsible for the delays, the trial court properly denied Appellants' liquidated damages claim.

## Trinity's Cross-Appeal

In its cross-appeal, Trinity asserts that the trial court erred in denying its claim for penalties and attorneys' fees under section 3935 of the Commonwealth Procurement Code (Code), 62 Pa. C.S. §3935.[5]  Trinity claims that the evidence demonstrates that the Authority acted in bad faith by: withholding $75,000 for masonry work, even though it was satisfied with the quality of the work; withholding money for punch-list items; and withholding an unjustifiable amount of liquidated damages.  We cannot agree.

---

[5] Section 3935(a) of the Code permits the trial court to impose "a penalty equal to 1% per month of the amount that was withheld in bad faith . . . to the extent that the withholding was arbitrary or vexatious."  62 Pa. C.S. §3935(a).  Section 3935(b) of the Code provides that the trial court may also award the prevailing party reasonable attorneys' fees.  62 Pa. C.S. §3935(b).

The trial court has "great latitude and discretion" in deciding whether to award penalties and attorneys' fees under section 3935 of the Code. *A.G. Cullen*, 898 A.2d at 1164. A trial court's denial of bad faith damages "is within its sound discretion, and we will only reverse [if we find] a clear abuse of discretion." *Department of General Services v. Pittsburgh Building Company*, 920 A.2d 973, 990 (Pa. Cmwlth. 2007). Under section 3935 of the Code, "bad faith" is the arbitrary or vexatious withholding of payment to a contractor. 62 Pa. C.S. §3935(a) & (b). A withholding is arbitrary if it is "'based on random or convenient selection or choice rather [than] on reason or nature.'" *Department of General Services*, 920 A.2d at 991 (citation omitted). A withholding is vexatious if it "'is committed without sufficient ground in either law or in fact with the purpose of causing annoyance.'" *Id.* (citation omitted).

Here, the trial court concluded that the evidence did not support a finding of bad faith. Throughout the course of the Project, many unanticipated problems arose, and the parties frequently disagreed as to how to handle those problems. Despite their differences, the Authority and Trinity worked together on several occasions to make changes to the Contract to address those problems. As the trial court observed, the parties "continu[ed] to work with one another, trusting one another that their problems would eventually be resolved," which "allowed the [P]roject to be completed ultimately, but also gave rise to a culture which left significant room for confusion and misunderstanding." (Trial Ct. Op. at 25.) The trial court, as the factfinder, determined that the Authority's decisions to withhold the funds at issue were based on reasonable, bona fide concerns and were neither random

9

nor undertaken with the sole purpose of annoying Trinity.  We find no clear abuse of discretion.  *See James Corporation v. North Allegheny School District*, 938 A.2d 474, 489-90 (Pa. Cmwlth. 2007) (stating that an appellate court may not reject a factfinder's bad faith determination absent a clear abuse of discretion).

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Trinity Contracting, Inc.      :
     : No. 523 C.D. 2015
v.      :
     :
Municipal Sewage Authority of      :
the Township of Sewickley and      :
Gibson-Thomas Engineering Co., Inc.,      :
     :
             Appellants      :


Trinity Contracting, Inc.,      :
     : No. 524 C.D. 2015
             Appellant      :
     :
v.      :
     :
Municipal Sewage Authority of      :
the Township of Sewickley and      :
Gibson-Thomas Engineering Co., Inc.      :


# O R D E R


AND NOW, this 15th day of December, 2015, we hereby affirm the December 22, 2014, order of the Court of Common Pleas of Westmoreland County.


_____
ROCHELLE S. FRIEDMAN, Senior Judge