IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rachelle Mashione                                    :
                                                     :
           v.                                        : No. 2086 C.D. 2015
                                                     : Submitted:  April 12, 2016
Municipality of Monroeville and                      :
Personnel Board of the Municipality                  :
of Monroeville,                                      :
                   Appellants                        :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: April 27, 2016


        The Municipality of Monroeville (Monroeville) and the Personnel Board of the Municipality of Monroeville (Board) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) restoring Rachelle Mashione's (Ms. Mashione) hourly pay and pension contributions and awarding her back pay, all taxes associated with back pay, and attorneys' fees and costs.  For the reasons that follow, we affirm in part and reverse in part.


**I.**

        From approximately April or early May 2010, Ms. Mashione was serving as the Secretary/Office Manager for Monroeville's Public Works Department (Public Works) when she received a letter in May 2010 offering her the added

position of "Purchasing Coordinator," expanding upon her responsibilities and providing her a $2.00 per hour pay increase. The letter stated, in pertinent part:

> I have discussed with your Department Head[,] [Michael John Adams (Mr. Adams),] and you the possibility of expanding your current Office Manager job responsibilities to including Purchasing Coordinator responsibilities….
>
> If you accept the additional responsibilities I will increase you[r] current rate of pay by $2.00 per hour. Also I would like you to attend the Monday morning staff meetings to coordinate purchasing requests that staff may have. You will also work with the Building Supply Coordinators, Lynette McKinney, Municipal Building, Johnna Cornelius, Public Library, Tara Gresock, Senior Citizens Center, as well as yourself at Public Works.

(Reproduced Record (R.R.) at 4a.) Ms. Mashione accepted the position. Prior to her job with Public Works, Ms. Mashione was working as a full-time Secretary/Office Manager for the Director of Personnel and Finance for Monroeville.

During her tenure as Office Manager/Purchasing Coordinator for Public Works, Ms. Mashione performed the purchasing coordinator's duties exclusively for Public Works. Ms. Mashione also helped Tim Little (Mr. Little), Monroeville's Municipal Manager, in the bid and procurement process for an estimated $250,000 purchase of replacement windows for the public library building. She did not, however, regularly assist other departments with their purchasing.

By letter dated March 4, 2014, Mr. Little informed Ms. Mashione that her duties as Purchasing Coordinator would be discontinued and that her base hourly rate would be reduced by the $2.00 per hour that she was afforded with the expanded

position.  Mr. Little explained in the letter that the decision was a "result of believing individualized purchasing within each Department, and not from a central position, would make for better purchasing procedures," and that each department would perform its own purchasing going forward.  (*Id.* at 19a.)  Mr. Little further clarified that the decision did not have any reflection on Ms. Mashione's job performance as Public Works' Secretary, acknowledging that her supervisor "has mentioned to me that your work has been good."  (*Id.*)  Subsequently, Ms. Mashione requested a non-public hearing before the Board pursuant to Section 1507 of Article XV of Monroeville's Home Rule Charter.

## II.

## A.

Before the Board, Ms. Mashione testified that she received the increased $2.00 per hour to "take on [Public Works] and that's what [sic], and if I was needed or like to help with the clerical aspect for other departments, that is what I would take on and that is what I signed off on."  (*Id.* at 43a.)  She elaborated that she only did commodity bids for Public Works and performed clerical tasks for other departments, but never commodity bids.  She stated that she met with the individuals mentioned in the May 2010 letter once or twice when she first took over the position of Purchasing Coordinator but never again.  Ms. Mashione stated that the $2.00 per hour increase commenced about two weeks after the May 2010 letter and stopped as of March 2014.  She also stated that her pay was backdated to account for the two-week period.  Finally, she stated that she did not have a contract with Monroeville.

The Board kept the record open for the deposition of Mr. Adams, Superintendent of Public Works and Ms. Mashione's supervisor.  Mr. Adams testified

3

that he was responsible for supervising Ms. Mashione after she was transferred into Public Works. He testified that he understood Ms. Mashione's job description to entail purchasing and inventory control of the supplies used by Public Works. He testified that he did not direct her to do work for any other department and that he did not instruct her to work with other Public Works personnel with regard to bid items, quotations, manuals, purchasing equipment or keeping records of other projects.

Mr. Adams stated that in her work for Public Works, Ms. Mashione attained knowledge of governmental purchasing requirements, including bid specification development, advertising and contract procedures, and that she worked with him in those areas. He testified that there was a possibility that Ms. Mashione performed the function of establishing and maintaining an effective Public Works purchasing and inventory program, as instructed in the May 2010 letter, early on in her tenure, but that she did not perform those roles for other departments. Mr. Adams testified that Ms. Mashione did the Public Works' purchasing, but that he had assigned another individual to do the department's inventory from about March 2010.

Mr. Adams admitted to discussing Ms. Mashione's position with Mr. Little prior to Mr. Little's March 4, 2014 letter, but stated that he had not seen the letter. He testified that since then, Ms. Mashione continued to enter all the purchase order numbers for the department. He further acknowledged that Ms. Mashione's work responsibilities had not changed after she received Mr. Little's March 4, 2014 letter.

Mr. Adams testified that Ms. Mashione's $2.00 salary increase was to make her a per se purchasing agent for Monroeville. He stated that Ms. Mashione

4

would sit in on Monday morning staff meetings until she was told to leave by the manager at the time. He testified that Ms. Mashione performed the same duties as her predecessor, Jill Garofolo (Ms. Garofolo), with the additional duty of commodities bidding that may have taken approximately two days to complete per year. Comparing Ms. Mashione's pay with that of Ms. Garofolo, Mr. Adams confirmed that Ms. Mashione was making $2.00 more an hour than Ms. Garofolo.

He also testified that he completed performance evaluations for Ms. Mashione, that the evaluations were generally positive, and that he would consider her a good employee. He stated that he never had any specific conferences with her about her job performance or what she should be doing for the department.

The Board concluded that pursuant to Sections 1507(a) (pertaining to causes for suspension, removal, demotion and reduction in rank) and 1507(c) (relating to accomplishing reductions of rank of paid employees) of Article XV of Monroeville's Home Rule Charter, the removal of a portion of Ms. Mashione's job duties coupled with the corresponding reduction in pay was lawful, as it constituted a "demotion" or "reduction in rank" as used in the Home Rule Charter. Ms. Mashione appealed to the trial court.[1]

---

[1] In her appeal, Ms. Mashione alleged that the Board's decision was arbitrary, capricious, not in accordance with law, lacking in substantial evidence, and an abuse of discretion because the Board: 1) failed to recognize that during the hearing, Monroeville's counsel agreed that Ms. Mashione was not guilty of the infractions listed in Section 1507(a) of the Home Rule Charter and that the Board failed to acknowledge that Mr. Little did not cite in his letter a reason under Section 1507(a) for his action taken against her; 2) determined that she was properly "demoted" despite there being no reason to demote her under Section 1507(a); 3) determined that she was properly "reduced in rank" despite there being no reason to reduce her rank under Section 1507(a); 4) determined that there was a reduction in rank when there were no "ranks" that applied in the matter and where no evidence was submitted that any such ranks existed; 5) determined that Section **(Footnote continued on next page…)**

5

**B.**

The trial court reversed the Board's decision and directed Monroeville to restore the $2.00 removed from her hourly wage "as though her hourly rate had never been reduced in March of 2014," award her full back pay for the period of time her hourly wage was reduced and payment of all taxes associated with the payment of the back pay, contribute to her pension for the period she was owed back pay, and pay her attorneys' fees. (*Id.* at 124a.) Monroeville appealed and the trial court instructed it to file a Rule 1925(b) Statement.[2]

---

**(continued…)**

1507(c) of the Home Rule Charter applied to the action taken against her because there was no reduction in rank; 6) determined that Section 1507(c) of the Home Rule Charter applied to the action taken against her because Section 1507(c) only permits a reduction to occur "in accordance with rules and regulations promulgated by the Manager and approved by Council," however, no such rules and regulations exist and no evidence of such rules were submitted to the Board; and 7) determined that Section 1507(c) of the Home Rule Charter lawfully entitled Mr. Little to either "reduce in rank" or "demote" Ms. Mashione when neither that Section nor any other law gives him such authority.

[2] Rule 1925(b) provides, in pertinent part:

> Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.—If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa. R.A.P.1925(b).

In response to Monroeville's Rule 1925(b) Statement,[3] the trial court issued a Rule 1925(a) Opinion,[4] in which it stated that there exists no legal basis for Monroeville to have taken the action it took. The trial court reasoned that Monroeville proffered no evidence that any of the criteria set forth in Section 1507(a) applies to Ms. Mashione; rather, the evidence that goes to Ms. Mashione's performance indicates that it was good, or at least acceptable, thereby rendering the Board's determination that Ms. Mashione was properly "demoted" as

---

[3] Monroeville alleged in its Rule 1925(b) statement, in pertinent part:

> 2. [The trial court] has committed an error of law and abused its discretion by determining that [Monroeville] was not authorized by the Monroeville Home Rule Charter to reduce [Ms. Mashione's] hourly wage.

> 3. [The trial court] has committed an error of law and abused its discretion by ordering the Appellee, [Monroeville] to pay all the taxes due on [Ms. Mashione's] awarded back pay when a portion of such taxes are the legal responsibility of [Ms. Mashione].

> 4. [The trial court] has committed an error of law and abused its discretion by awarding [Ms. Mashione] attorneys' fees when there is no statute or other finding entitling [Ms. Mashione] to the payment of attorneys' fees.

(R.R. at 128a-129a.)

[4] Pa. R.A.P.1925(a) requires a judge to issue an opinion setting forth the reasons for his ruling upon receipt of a notice of appeal. It states:

> Upon receipt of the notice of appeal the judge who entered the order appealed from, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief statement, in the form of an opinion, of the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found.

unsubstantiated. With regard to the Board's determination that Ms. Mashione was properly "reduced in rank," the trial court found there to be no evidence that would suggest that Monroeville designated its employees by "rank" and no evidence that reveals actions taken or authority relied upon which could be reasonably interpreted as "rules and regulations promulgated by the Manager and approved by Council," as required by Section 1507(c). Finally, the trial court found that no other authority supports the conclusion that Ms. Mashione was properly demoted by Mr. Little and that any such conclusion by the Board constitutes legal error. The trial court concluded:

> While Monroeville's brief couches its arguments within the statutory authority to demote and/or reduce rank found in Section 1507(a), and 1507(c), Monroeville's argument really is based in the logic of equity, inasmuch as Monroeville suggests that [Ms.] Mashione was "promoted" to a position, thereby receiving an increase in pay, but was never actually called upon to perform the obligations of the new position, and therefore was appropriately subject to a reduction in pay. While the logic of this equitable argument is not lost on the undersigned, it remains the fact that there exists no legal basis to take the action that Monroeville took.

(*Id.* at 135a.) This appeal followed.

## III.

### A.

On appeal,[5] Monroeville contends that the trial court erred in determining that it was not entitled to reduce Ms. Mashione's pay pursuant to Section 1507 of the Home Rule Charter for not performing the duties upon which the $2.00 per hour increase in pay was predicated.

Monroeville is governed by a Home Rule Charter. The Pennsylvania Constitution allows for municipalities that have Home Rule Charters to "exercise any power or perform any function not denied by this Constitution, by its Home Rule Charter or by the General Assembly at any time." Pa. Const. art. 9, §2. "In general, the adoption of a Home Rule Charter acts to remove a municipality from the operation of the code provisions enumerating the powers of that particular class of municipality. Thus, in the absence of explicit constraint or collateral effect on another municipality, there will be no conflict between the home rule municipality's actions and the former code provisions, since the latter no longer apply." *Wecht v. Roddey*, 815 A.2d 1146, 1152 (Pa. Cmwlth. 2002).

Article VII of Monroeville's Home Rule Charter enables Monroeville's municipal manager to "appoint, suspend or remove all municipal employees, except as otherwise provided by law or this Charter and report any such action at the next business meeting of Council." (R.R. at 54a.) However, Article XV of the Home

---

[5] Where the trial court takes no additional evidence, our scope of review is the same as that of the trial court under Section 754(b) of the Local Agency Law, 2 Pa. C.S. §754(b). Our scope of review is limited to whether the trial court committed a legal error and whether the findings were supported by the evidence. *Wecht v. Roddey*, 815 A.2d 1146 (Pa. Cmwlth. 2002).

Rule Charter sets out the municipality's rules in dealing with its personnel, under which Section 1507(a) allows for the suspension, removal, demotion or reduction in rank of a member of the "Career Service"[6] only for the following reasons:

> (1)    Physical or mental disability affecting the ability of an employee to continue in the performance of the duties of the position.
>
> (2)    Neglect or violation of any official duty or assignment.
>
> (3)    Conviction of a misdemeanor or felony.

---

[6] Section 1508 of Article XV of Monroeville's Home Rule Charter pertains to the Career Service and provides:

> The Career Service shall be a permanent service to which the provisions of this Article shall apply and shall comprise all positions in the municipal service now existing or hereafter established, except the following:
>
> > (a)    Members of Council and other elected positions.
> >
> > (b)    Members of Boards, Commissions, Authorities and heads of administrative units.
> >
> > (c)    Persons employed to make or conduct a temporary and special inquiry, investigation or examination on behalf of Council or the Manager.
> >
> > (d)    Persons employed as professional consultants or who are employed on a retainer basis.
> >
> > (e)    Persons whose positions are defined by Act of the General Assembly to be of a confidential nature.
> >
> > (f)    Part-time or occasional employees.

(4) Inefficiency, neglect, intemperance, immorality, insubordination, willful disobedience of orders, or conduct unbecoming an employee.

(5) Intoxication while on duty.

(6) Engaging in political activity prohibited under [Article XV].

(R.R. at 59a.)

It is undisputed that Ms. Mashione, a member of the "Career Service," has not committed any of the six acts enumerated under Section 1507(a) of Monroeville's Home Rule Charter.[7] In fact, Mr. Little noted in his March 4, 2014 letter that her reduction in pay was not a reflection of her job performance, and that her supervisor had informed him that her work had been good. Moreover, during the hearing, Ms. Mashione's supervisor confirmed that she was a good employee and performed the duties he delegated. Given the lack of evidence to the contrary, we agree with the trial court that the Board's determination that Ms. Mashione was properly "demoted" is unsubstantiated.

Monroeville does not dispute that the action taken against Ms. Mashione does not fall within the provisions of Section 1507(a), but instead argues that the action must be analyzed under Section 1507(c), which enables the municipality to reduce the rank of employees provided certain conditions are met:

---

[7] Monroeville's counsel stipulated that Ms. Mashione did not commit any act listed in Section 1507(a).

11

> If, for reasons of economy, or other reasons, it shall be deemed necessary by the municipal government to reduce the number or rank of paid employees, such reductions shall not be subject to the provisions of this section, but shall be accomplished in accordance with rules and regulations promulgated by the Manager and approved by Council.

Agreeing that Ms. Mashione's position was changed from Office Manager/Purchasing Coordinator to Office Manager only because she was not performing the purchasing agent function, Monroeville asserts that the "other reasons" portion of Section 1507(c) must instead be examined. Monroeville suggests that the inclusion of the words "other reasons" indicates a clear intention of the drafters of the Home Rule Charter "to include reasons for suspension, removal, demotion or reduction in rank that are beyond the reasons articulated" otherwise in Section 1507. (Monroeville's Brief at 11.) Specifically, Monroeville adds that the words "other reasons" enable the reduction of an employee's pay if the employee was not performing the duties for which the higher pay was provided.

First, eliminating a position or changing a position to a lesser one for efficiency reasons can be for "reasons of economy" because it is uneconomical for the government to pay for something it does not need; in other words, a government does not have to be out of money before a government can lay off personnel for reasons of economy. In any event, we agree with Monroeville that "other reasons" includes not paying an employee for duties that he or she is not performing or other reasons relating to the efficiency of government. However, that does not end the matter. While there may be "other reasons" that would allow for a reduction in rank, the question then is whether Monroeville's action was a reduction in rank, and, if so, was the reduction properly effectuated.

12

The Board determined that Ms. Mashione was lawfully "reduced in rank" pursuant to Section 1507(c) which provides Monroeville the ability to "reduce the … rank" of its employees "for reasons of economy, or other reasons." The trial court, though, found this provision inapplicable because there was no evidence that Monroeville designated its employees by "rank". That reasoning presumes that to reduce someone in rank, there must be some hierarchical ranking of employees. Another interpretation, however, is that a reduction in rank occurs when a person is moved from one position to another position that pays less. When Monroeville adopted its Home Rule Charter, Section 21-1 of Monroeville's Ordinance defined "reduction in rank" as it relates to the Civil Service Commission (supplanted by the Personnel Board) as:

> A change to a lesser position or rank where the employee fulfilled all of the requirements of these rules and regulations for both the prior and current position and/or rank. However, a decrease in salary without a change to a different position or rank shall not necessarily constitute a reduction in rank.

Given that that was the definition when the Home Rule Charter went into effect, that is the more reasonable interpretation of that provision and, therefore, the change from Office Manager/Purchasing Coordinator to Office Manager was a reduction in rank within the meaning of the Home Rule Charter.

Again, that does not end the matter. Section 1507(c) conditions the ability of a manager to reduce an employee's rank only if "accomplished in accordance with rules and regulations promulgated by the Manager and approved by Council." Monroeville has not presented any evidence of the existence of such rules

and regulations on how to carry out the reduction in rank, which is a precondition before reductions occur. Because there were no rules in effect, Monroeville was without authority to reduce Ms. Mashione's salary until those rules went into effect.

**B.**

Monroeville next argues that the trial court erred in awarding Ms. Mashione's attorneys' fees and costs.[8] Citing *James Corporation v. North Allegheny School District*, 938 A.2d 474, 490 (Pa. Cmwlth. 2007), it argues that Ms. Mashione is not entitled to attorneys' fees because there is no express statutory authorization, no agreement between the parties, nor any exception that allows for such an award.

In *James Corporation*, we explained that "parties are generally not entitled to an award of counsel fees from an adverse party in the absence of express statutory authorization, a clear agreement between the parties, or the application of a clear exception." 938 A.2d at 490. We agree with Monroeville that there is no statutory authorization or an agreement between the parties as to attorneys' fees.

Ms. Mashione, however, contends that there is an exception because Monroeville's action against her was arbitrary, vexatious and/or in bad faith because there is no evidence to support Monroeville reducing her pay.[9] Our Supreme Court,

---

[8] "Appellate review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award." *Thunberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996).

[9] In arguing that the action taken against her was arbitrary, vexatious and/or made in bad faith, for the first time before this Court, Ms. Mashione alleges that, "The action taken against Ms. Mashione is either random or based upon political corruption and a vendetta against her family **(Footnote continued on next page…)**

14

in *Thunberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996), described the actions which would be considered arbitrary, vexatious or in bad faith:

> An opponent's conduct has been deemed to be "arbitrary" within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature. An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance. Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty, or corruption.

(citations omitted). Moreover, "where there is no basis in law or fact for the commencement of an action, the action is arbitrary." *Id.*

Here, we cannot find that Monroeville's actions were in any way arbitrary, vexatious or conducted in bad faith. First, Ms. Mashione exhausted her rights and appealed Mr. Little's decision to the Board, and then appealed the Board's determination to the trial court. Monroeville then appealed to this Court because the trial court found against it. Simply, because Monroeville's action in reducing Ms. Mashione's pay was improper, that does not automatically insinuate that its role in this litigation is in any way arbitrary, vexatious or in bad faith. Given the lack of statutory authorization, agreement or exception, we find the trial court's award of attorneys' fees and costs to be in error.

_____

**(continued…)**

since her sister had been terminated mere months before Ms. Mashione's illegal demotion." (Ms. Mashione's brief at 20.)

15

## C.

Finally, Monroeville contends that the trial court erred in requiring it to pay all taxes associated with the back pay awarded to Ms. Mashione. Monroeville argues that paying all of the taxes associated with the back pay would result in a windfall to Ms. Mashione given that it is her responsibility to pay a portion of the taxes on her salary. Monroeville further speculates that perhaps the award of all of the taxes associated with back pay was an oversight by the trial court and that it intended for Monroeville to only pay the employer portion of the taxes.

While contending that the trial court award should be affirmed, Ms. Mashione contends that the trial court's order intended for Monroeville to pay all of employer's portion of taxes due to her back pay and to compensate her for any increased tax burden caused as a result of her lump sum award.

Because there seems to be some confusion, even among the parties as to what taxes the trial court meant to be covered, we remand to the trial court to specifically explain how this relief falls within "any other relief this court deems just and proper" when Ms. Mashione specifically did not request such relief and to delineate what taxes are covered. Given that this is an appeal from a Personnel Board determination, the trial court should consider whether the Personnel Board had the power to make that award for taxes the trial court imposed as damages.

Accordingly, we affirm the trial court's order with respect to restoring the $2.00 removed from Ms. Mashione's hourly wage, back pay for the period the hourly wage was reduced, and pension contributions for the period Ms. Mashione is

owed back pay, but remand for an explanation of what taxes were included in the award. We reverse as to the award of attorneys' fees and costs.


_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rachelle Mashione                              :
                                               :
              v.                               : No. 2086 C.D. 2015
                                               :
Municipality of Monroeville and                :
Personnel Board of the Municipality            :
of Monroeville,                                :
                    Appellants                 :


# **O R D E R**


AND NOW, this 27th day of April, 2016, the order of the Court of Common Pleas of Allegheny County dated October 5, 2015, at No. SA 14-000868, is affirmed with regard to restoring the $2.00 removed from Rachelle Mashione's hourly wage, back pay for the period Ms. Mashione's hourly wage was reduced, and pension contributions for the period for which she is owed back pay and reversed as to the payment of attorneys' fees and costs; and this matter is remanded for an explanation of what taxes were included in the award.


        Jurisdiction relinquished.


                                    _____
                                    DAN PELLEGRINI, Senior Judge